**NOT FOR PUBLICATION_____**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

MICHAEL OKPOR,                      :
                                    :
                                    :
            Plaintiff               :            Civil No. 05-129 (FLW)
                                    :
            v.                      :        **MEMORANDUM OPINION**
                                    :
RUTGERS, THE STATE UNIVERSITY       :
OF NEW JERSEY                       :
                                    :
            Defendant               :
_____:


        Presently before the Court is a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and

12(b)(6), or in the alternative, a motion for summary judgment pursuant to Fed.R.Civ.P. 56(b)

brought by Rutgers, The State University of New Jersey ("Rutgers" or "Defendant") on the

Complaint of Michael Okpor, pro se ("Plaintiff").  Plaintiff seeks relief under 42 U.S.C. § 1983 ("§

1983"), alleging that Defendant's School of Business violated his procedural due process rights,

breached an express contract and violated an implied covenant of good faith and fair dealing.  On

February 14, 2005, Plaintiff filed an Amended Complaint to include a civil rights violation under

42 U.S.C. § 1981 ("§ 1981").[1]  The Court has considered the parties' papers pursuant to Fed.R.Civ.P.

_____

[1] Fed.R.Civ.P. 15(a) permits a party to file an amended complaint once as a matter of course at any time
before a responsive pleading is served.  Fed.R.Civ.P. 15(a).  Here, because Defendant filed a motion to dismiss in
lieu of an answer, such motion is not a responsive pleading within the meaning of Rule 15(a).  See Kelly v. Del.
River Joint Comm'n, 187 F.2d 93, 95 (3d Cir.1951); see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir.2000)

78, and for the reasons stated below, the Plaintiff's Complaint is dismissed in its entirety with prejudice.

## I.       BACKGROUND

Plaintiff was a student at Defendant's undergraduate School of Business from fall 1997 until his final dismissal in January, 2002.  While attending Rutgers, Plaintiff failed numerous classes, yet consistently requested make-up examinations and late withdrawals from his courses.  After the fall 2001 semester, Plaintiff's grade-point average fell below the required 2.0 minimum for the second time, which resulted in Plaintiff's second, and final, dismissal from Rutgers.  Plaintiff asserts in his initial Complaint that (1) Defendant violated his procedural due process rights by failing to abide by its own guidelines for withdrawal from classes, (2) Plaintiff had an express contract with Defendant, which Defendant breached by dismissing Plaintiff, and (3) Defendant violated an implied covenant of good faith and fair dealing in its contractual relationship with Plaintiff.   In his Amended Complaint, without asserting any additional facts, Plaintiff alleges that Defendant "violated the equal protection clause of the fourteenth amendment, [T]itle VI of the [C]ivil [R]ights Act of 1964 and 42 U.S.C. § 1981."  Pl. Am. Compl. at 2.

## A.       Procedural history

Plaintiff commenced an action in the Chancery Division of the Superior Court of New Jersey

---

(stating that where a defendant asserts the defense of failure to state a claim by motion, the plaintiff may amend the complaint once "as a matter of course" without leave of court) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[5], at 12-76 (3d ed.1999) (quoting Fed.R.Civ.P. 15(a))).  Thus, Plaintiff was allowed to amend his Complaint as a matter of right without permission of the Court.

on or about January 21, 2004.[2]  See Sponzilli Cert. Ex. A.  In his complaint, Plaintiff sought an order compelling Rutgers to allow Plaintiff to retake all the courses that he had failed and to change all of his grades from "F" (fail) to "W" (withdrawal).  Id.  On March 22, 2004, the state court denied Plaintiff's application for injunctive relief against Defendant.  See Sponzilli Cert. Ex. B.

On March 30, 2004, Rutgers filed and served its answer to Plaintiff's complaint in the state court action.  See Sponzilli Cert. Ex. C.  On or about March 30, 2004, Plaintiff filed an amended complaint alleging that his "unfair academic dismissal" from Rutgers was "a direct and proximate result of the negligence of the [D]efendant's staff members," and that consequently, Plaintiff "suffered grievous financial loss, anxiety, and depression."  Sponzilli Cert. Ex. D.  Despite allegations of negligence in his amended complaint, Plaintiff never filed a Notice of Tort Claim with Rutgers, as required by N.J.S.A. 59:1-1, et seq.  See Denner Cert. Ex. 4, ¶¶ 4, 5.

On November 16, 2004, Plaintiff filed a second amended complaint in state court, incorporating his previous claims and adding allegations of breach of contract, breach of covenant of good faith and fair dealing, and a claim under New Jersey's Consumer Fraud Statute, N.J.S.A. 56:8-2.[3]  See Sponzilli Cert. Ex. H.  According to Plaintiff, he had an express contract with Rutgers because Plaintiff's payment of tuition fees constituted consideration for Defendant providing an education and a degree.  Id.  Plaintiff alleged that Defendant breached this contract by dismissing him from the University.  Id.  Plaintiff further claimed that the "contract" contained an implied

---

[2] The record contains a letter dated April 12, 2002 from an attorney stating that he was retained to represent Plaintiff.  This letter was attached to Plaintiff's May 19, 2005 second response to Defendant's motion for summary judgment.  It is unclear if Plaintiff received legal advice after filing his complaints with either the state court or this Court, and the attorney is not mentioned in any other documents submitted to this Court in connection with Defendant's motion.

[3] It is unclear from the record whether Plaintiff filed this second amended complaint with permission of the court.  See discussion infra at 4.

3

covenant of good faith and fair dealing, which Defendant also breached by expelling him.  Id.
Lastly, Plaintiff alleged that Defendant's breach of the implied covenant of good faith and fair
dealing constituted an unconscionable business practice in violation of New Jersey's Consumer
Fraud Statute.  Id.

On November 17, 2004, Defendant filed a motion for summary judgment in state court.
While Defendant asserts that "Plaintiff moved for permission to amend [his complaint] a second
time," Def. Br. at 8, it is not entirely clear from the record whether Plaintiff made such motion prior
to filing his second amended complaint on November 16, 2004.  According to Defendant, Plaintiff's
motion to amend his complaint was consolidated with Defendant's motion for summary judgment.
See Def. Br. at 8.  After hearing oral argument on December 17, 2004, the state court denied
Plaintiff's motion requesting leave to amend his complaint for a second time, granted Defendant's
motion for summary judgment and dismissed with prejudice all of Plaintiff's claims.  See Sponzilli
Cert. Ex. G, I.  The state court based its dismissal of Plaintiff's claims on Plaintiff's failure to file
the 90-day Notice of Tort Claim as required by the Tort Claims Act and failure to file a complaint
within the applicable two-year statute of limitations period.  See 12/17/04 Tr. (Pl. Opp. Ex. 1) at 53-
55.  The state court also found that the dismissal of Plaintiff's complaint rendered Plaintiff's motion
to amend his complaint moot.[4]  See id. at 56.

On January 21, 2005, the state court heard oral argument on Plaintiff's motion for
reconsideration of its decision dismissing Plaintiff's claims.  While that motion was still pending,
Plaintiff filed the instant action in this Court on January 10, 2005, asserting the same allegations and

---

[4] The Court notes that the state court did not specifically address on the merits Plaintiff's breach of contract
and breach of covenant of good faith and fair dealing claims.

4

seeking the same relief as made in his state court complaint.  See Pl. Compl.  Plaintiff's motion for reconsideration was ultimately denied by the state court on January 27, 2005.  See Sponzilli Cert. Ex. J.

On February 14, 2005, Plaintiff filed an Amended Complaint in this action asserting violations of § 1981.  See Pl. Am. Compl.  On May 9, 2005, Plaintiff requested that this Court dismiss his § 1983 action without prejudice pending his appeal in the state court.  See Pl. 4/27/05 Resp. to Def. Mot. Summ. J. ("Pl. Resp. #1"), ¶ 16.

On May 19, 2005, Plaintiff filed a second response to Defendant's motion, alleging that Defendant also violated 42 U.S.C. § 1985 and § 1986.[5]  See Pl. 5/19/05 Resp. to Def. Mot. Summ. J. ("Pl. Br. #2"), ¶ 15.  Plaintiff alleges that Defendant racially discriminated against him because he is African-American, and denied him the right to complete his courses.  Id. ¶¶ 2, 4.  Plaintiff also claims that Defendant's School of Business and Academic Dean Samuel Rabinowitz conspired to deprive Plaintiff of the right to complete his courses because of Plaintiff's race.  See Pl. Br. #2, ¶ 4.

**B.      Plaintiff's academic history**

Plaintiff transferred to Rutgers University School of Business from Camden Community College in the fall of 1997.  See Denner Cert. Ex. 1, ¶ 5.  From 1997 through his final dismissal from Rutgers in 2002, Plaintiff asked for eleven grade changes and repeatedly requested late withdrawals from courses and make-up examinations due to his failure to attend classes and to take examinations on the scheduled dates.  Id. ¶¶ 5, 6.

According to Rutgers' Academic Policies and Procedures, students may change their courses

---

[5] The Court notes that the Federal Rules of Civil Procedure do not permit a "second response" in connection with a motion for dismissal and/or summary judgment.  Defendant has requested that this Court disregard Plaintiff's second response because it was untimely and inappropriate.  See Def. Letter dated May 23, 2005.

without any adverse consequences until the end of the "drop/add period," which is the sixth day of the school term.  <u>See</u> Denner Cert. Ex. 2 at 1 (150); Denner Cert. Ex. 1, ¶ 9; Denner Cert. Ex. 2.  If a student wishes  to withdraw from a course after the end of the "drop/add period," the student must follow the procedures outlined in the Academic Policies and Procedures before the end of the eighth week of the school term.  <u>See</u> Denner Cert. Ex. 2 (151).  Withdrawals from courses are not permitted or recognized during the final two weeks of the school term.  <u>Id.</u> at 3 (152).  Students who drop a course after the eighth week will receive a failing grade, which is then computed into the student's cumulative grade-point average.  <u>Id.</u>; Denner Cert. Ex. 1, ¶ 9.

When a student fails to fulfill the course requirements, an "Incomplete" or "IN" grade is assigned to the student's record.  Denner Cert. Ex. 2 at 3 (152).  It is the student's responsibility to "consult with the instructor to arrange for the conversion of the "IN" grade to a permanent grade." <u>Id.</u>  An "Incomplete" which is not remedied by the date outlined in the Academic Policies and Procedures is automatically converted into a failing grade.  <u>Id.</u>  In addition, a student who misses an examination or fails to meet course requirements must receive permission from the professor to take a make-up examination or obtain an extension of time for the submission of a written product.  <u>See</u> Denner Cert. Ex. 1, ¶ 12.  According to Defendant, make-up examinations may take place after the term concludes, but a student will rarely be permitted to extend a make-up beyond one additional semester.  <u>Id.</u>

Here, Plaintiff requests changes for grades in courses he took as long as five years ago.  <u>See</u> Pl. Compl. Superior Ct. ¶ 23.  According to Larry R. Gaines, Rutgers' Associate Dean for Administration and Finance, "the request for grade changes over a five year period is unheard of." Denner Cert. Ex. 1, ¶ 13.  Moreover, Associate Dean Gaines has stated that Plaintiff's attempt to

6

cleanse his record of undesirable grades would compromise the integrity of the University's grading policies and constitute a misrepresentation of Plaintiff's academic performance to other academic institutions and Plaintiff's prospective employers.  Id.

Plaintiff, on the other hand, claims that he was unable to complete his course requirements because of injuries sustained from multiple car accidents.  Pl. Br. ¶ 1.  However, Plaintiff admits that he never went to Rutgers' office for disabled students to seek a disabled status.  Okpor Dep. at 109. Plaintiff claims that he complied with Rutgers' guidelines regarding retroactive withdrawal from courses without academic penalty, and that he submitted doctors' notes regarding the injuries and disabilities resulting from his accidents.  Id. ¶¶ 2, 3.  According to Plaintiff, Rutgers treated such notes as falsified and thus gave Plaintiff failing grades in his courses.  Id. ¶ 4; Pl. Compl. ¶ 6.  According to Defendant, however, the school questioned the validity of the doctors' notes because the notes were "written on prescription forms, or [were] unaddressed and simply state[d] that Plaintiff [was] disabled for a predicted period of time based on unspecified conditions."  Denner Cert. Ex. 1, ¶ 15.

Defendant claims that although Plaintiff had numerous opportunities to take make-up examinations, he failed to complete the scheduled make-ups.  See Denner Cert. Ex. 1, ¶¶ 21, 23.  For example, Plaintiff failed to appear at a prearranged make-up examination in the spring term of 1998. Id. ¶ 23.  Moreover, Defendant contends that Plaintiff did not adequately explain why his physical injuries only affected his ability to complete an examination in one course, and not all four courses during the fall term of 1997.  Id. ¶ 20.  Similarly, during the spring term of 1998, Plaintiff failed to attend final examinations in two of his classes, but managed to take the finals in two of his other courses, either on the scheduled exam dates or at prearranged make-ups.  Id. ¶ 28.

Another example of Plaintiff's poor academic history is evidenced by his final grade of "F"

in Business Communications in the fall 1998 semester.  According to Defendant, Plaintiff attended only five of fifteen classes and completed only one of three quizzes given by the professor.  <u>See</u> Denner Cert. Ex. 3 (Urban Cert.), ¶¶ 4-8.  Plaintiff also failed to complete a research project, attend the final class and submit the final written portion of the research project.  <u>See</u> <u>id.</u>  The professor of the course, Anthony Urban, Jr., stated that Plaintiff had submitted a written research project at the end of the semester, but admitted to copying another student's work for his project.  <u>Id.</u> ¶ 10.

Plaintiff was academically dismissed on February 16, 1999 for failing to maintain a minimum grade point average of 2.0, as required by the University.  <u>See</u> Denner Cert. Ex. 1, ¶ 37; Ex. 2 at 6 (155).  Plaintiff then enrolled as a non-matriculating student at Rutgers during the summer session of 1999 and was readmitted to the University after obtaining a "B" in each of the two courses he took that summer.  <u>See</u> Denner Cert. Ex. 1, ¶ 39.  However, the record shows that Plaintiff again encountered academic difficulty upon his readmittance to the school.  For instance, he received a "D" in Operations Management because he only attended nine of fifteen class meetings, missed examinations, and received grades of "D" and "F" in his make-up examinations.  <u>See</u> Denner Cert. Ex. 3 (Scarborough Cert.), ¶¶ 4-6.  On February 8, 2001, Plaintiff was dismissed from the University for the second time.  <u>See</u> Denner Cert. Ex. 1, ¶ 50.  However, Defendant ultimately rescinded Plaintiff's dismissal because Plaintiff took a make-up final examination in one of his classes and retroactively raised his grade point average above the required 2.0 minimum.  <u>Id.</u> ¶ 51.

It is unclear whether Plaintiff attended classes after the February 8, 2001 notice of dismissal. <u>Id.</u> at 53.  The record indicates that on May 2, 2001, the Associate Dean advised Plaintiff that he could either withdraw from all of his courses for the spring term of 2001 without financial or academic penalty, or he could complete his courses for the term.  <u>Id.</u> ¶¶ 54-55; Denner Cert. Ex. 2 Ex. K.

Although Plaintiff was informed that he may be at academic risk if he chose to pursue his spring 2001 courses, see Denner Cert. Ex. 1, ¶ 57; Denner Cert. Ex. 2 Ex. K, Plaintiff chose to take his final examinations for these classes.  See Denner Cert. Ex. 1, ¶ 65.  Plaintiff failed two of these exams and only passed one.  See id.  Plaintiff then attempted to retroactively withdraw from one of the courses he failed after the conclusion of the semester - an act not permitted under the University's agreement governing Plaintiff's readmission to Rutgers on May 2, 2001.  Id. ¶ 64; Denner Cert. Ex. 2 Ex. K.

In the fall term of 2001, although Plaintiff failed or received incompletes in most of his courses, he  sought to retroactively withdraw from such classes.  See Denner Cert. Ex. 1, ¶ 76.  On January 21, 2002, Plaintiff was notified of his final dismissal from Rutgers.  Id. ¶ 77.  According to Defendant, no further readmission was permitted given the circumstances of Plaintiff's dismissal.  Id.  The record indicates that Plaintiff continued to take courses as a non-matriculating student during the summer sessions of 2002 and 2003.  Id. ¶¶ 79, 80.

## II.    DISCUSSION

The core of Plaintiff's argument is that his medical reasons constituted acceptable grounds for withdrawal from classes under Rutgers' Guidelines for Withdrawal Petitions.  Because Defendant denied Plaintiff's petitions for withdrawals, which were accompanied by doctors' notes, Plaintiff alleges that Defendant violated his procedural due process rights under § 1983 and that Defendant breached an express contract and the implied covenant of good faith and fair dealing.[6]  See Pl. Compl.

---

[6] While Plaintiff claims that medical reasons *will* constitute grounds for acceptance of withdrawal under Rutgers' Guidelines for Withdrawal Petitions, the Guidelines state that "[g]enerally, [medical reasons] will constitute grounds for acceptance of withdrawal petitions."  See Pl. Br. #1 Ex. 3 at 29 (emphasis added).  Therefore, there is no guarantee that all medical reasons, regardless of their validity, *must* be accepted as grounds for withdrawal.

9

However, since Plaintiff's § 1983 claim was already adjudicated and dismissed on the merits in state court, and since his § 1981 claim rests on the same factual allegations asserted in the already adjudicated § 1983 claim and does not state a separate cause of action under § 1981, Plaintiff's Amended Complaint in this action must be dismissed in its entirety.

**A.     Standard of review**

Defendant has framed its motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or, in the alternative, a motion for summary judgment under Fed.R.Civ.P. 56(b).  When making a determination under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings.  When, as here, both parties present extraneous material as part of their motion or opposition, this Court has the discretion to accept the extraneous material and convert the motion into one for summary judgment.  See Fed.R.Civ.P. 12(b); Koernschild v. W.H. Streit, Inc., 834 F.Supp. 711, 713-14 (D.N.J. 1993); Rose v. Bartle, 871 F.2d 331, 339-40 (3d Cir.1989); Wiley v. Hughes Capital Corp., 746 F.Supp. 1264 (D.N.J. 1990); Elysian Federal Savings v. First Interregional Equity, 713 F.Supp. 737, 740 (D.N.J. 1989); 5 Charles Wright & Arthur Miller, Federal Practice and Procedure § 1366 at 678 (West 1969 & Supp.1989).  Because the Court has relied on matters outside the pleadings, it will address the instant motion filed by Defendant as a motion for summary judgment.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To avoid summary judgment, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'"

10

Celotex Corp., 477 U.S. at 324.  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the evidence, the Court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [nonmoving] party."  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir.2002) (quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir.1999)).  Conclusory allegations do not meet the non-moving party's duty to set forth specific facts showing that a genuine issue of material fact exists and a reasonable fact finder could rule in its favor.  Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir.1999).  In this Circuit, however, it has been held that the pleadings of pro se plaintiffs are to be construed liberally.  Alston v. Parker, 363 F.3d 229, 234 (3d Cir.2004) (citing Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.2003)).

**B.**  **New Jersey's entire controversy doctrine and the principle of res judicata bar Plaintiff's claims**

New Jersey's entire controversy doctrine, codified in Rule 4:30A of the New Jersey Rules of Civil Procedure, provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of omitted claims to the extent required by the entire controversy doctrine ...."  N.J.R. 4:30A.  It is the "commonality of facts," rather than legal issues, parties or remedies, "that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine."  DiTrolio v. Antiles, 142 N.J. 253, 272 (1995).  Thus, "the central consideration is whether the claims ... arise from related facts or the same transaction or series of transactions."  Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 265 (3d Cir.2004) (quoting DiTrolio, 142 N.J. at 267).  The entire controversy doctrine applies to "virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation."  Id. at 265 (citation

11

omitted).  Federal courts in New Jersey have applied New Jersey's entire controversy doctrine to bar claims that were actually litigated or could have been litigated in previous state court actions.  <u>See</u> <u>Bernardsville Quarry v. Borough of Bernardsville</u>, 929 F.2d 927, 930 (3d Cir.1991); <u>Heir v. Del.</u> <u>River Port Auth.</u>, 218 F.Supp.2d 627, 632 (D.N.J. 2002); <u>Dowdell v. Univ. of Medicine and Dentistry</u> <u>of New Jersey</u>, 94 F.Supp.2d 527, 534 (D.N.J. 2000).

Morever, under the Full Faith and Credit Clause of the United States Constitution, "the judicial proceedings of a state court shall have the same full faith and credit within every court in the United States as they have by law or usage in the courts of the issuing state."  <u>Paramount Aviation</u> <u>Corp. v. Agusta</u>, 178 F.3d 132, 141 (3d Cir.1999).  Thus, a federal court in New Jersey must apply New Jersey's preclusion law, including its entire controversy doctrine, when determining the preclusive effect of a previous judgment issued by a New Jersey state court.  <u>See</u> <u>Total Packaging</u> <u>Corp. v. Tenneco Packaging Corp.</u>, No. 01-4286, 2004 WL 758240, at *4 (D.N.J. Apr. 2, 2004); <u>Sutton v. Sutton</u>, 71 F.Supp.2d 383, 390 (D.N.J. 1999).  In addition to the entire controversy doctrine, courts may also apply New Jersey's general principles of <u>res judicata</u> when determining the preclusive effect of a New Jersey judgment.  <u>See</u> <u>Sutton</u>, 71 F.Supp.2d at 390-91.

The principle of <u>res judicata</u> bars the re-litigation of claims that were decided in a previous case involving the same parties and arising out of the same transaction.  Res <u>judicata</u> "avoids 'the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'"  <u>E.E.O.C. v. U.S. Steel</u> <u>Corp.</u>, 921 F.2d 489, 492 (3d Cir.1990) (quoting <u>Montana v. United States</u>, 440 U.S. 147, 153-154 (1979)).  In order for a subsequent action to be barred by <u>res judicata</u> under New Jersey law, 1) the judgment in the prior action must be valid, final, and on the merits, 2) the parties in the later action

12

must be identical to or in privity with those in the prior action, and 3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.  See Sutton, 71 F.Supp.2d at 390 (citing Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 412 (1991)).  Similarly, under federal law, a subsequent action will be barred by res judicata if there is "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies."  Id. at 389 (quoting U.S. Steel Corp., 921 F.2d at 493).

　　Here, the Court finds that Plaintiff's Complaint, even in its amended form, is barred by New Jersey's entire controversy doctrine.  All of the claims raised in the present action, necessarily arise from the same facts and transactions as the claims raised in the state court action.  As in his state court complaint, Plaintiff here alleges that he was denied the right to complete his undergraduate degree and suffered financial losses due to his dismissal from the University.  The allegations in Plaintiff's Complaint and Amended Complaint in this matter mirror those claims asserted in the state court proceeding.  For example, in both actions, Plaintiff claims that he was involved in serious motor vehicle accidents and thus unable to complete his courses.  Plaintiff further alleges that he followed Defendant's policies for withdrawing from his courses by submitting doctors' notes, but was unfairly denied his right to withdraw.  In addition, Plaintiff alleges in both actions that Plaintiff had an express contract with Defendant, which Defendant breached, along with the contract's implied covenant of good faith and fair dealing, by arbitrarily dismissing Plaintiff from the University.[7]

　　In addition to the identical claims asserted in the state and federal actions, Plaintiff presents no facts before this Court that were not already addressed in the state court proceeding.  The only

---

[7] In this action, Plaintiff asserts breaches of contract and the covenant of good faith and fair dealing, yet these claims arise out of the same facts and transactions alleged in Plaintiff's second amended complaint in his state court action.  See Sponzilli Cert. Ex. H.

difference between Plaintiff's claims in this Court and those in state court is the addition of Plaintiff's equal protection and § 1981 claims.[8]   However, these additional civil rights violations are not supported by the evidence in the record or by any facts in Plaintiff's Complaint or Amended Complaint in this action.  Moreover, these allegations arise out of the same facts and transactions as Plaintiff's claims in the state court action and should therefore have been joined in the state court complaint.  In sum, all of Plaintiff's claims in the present matter were either already adjudicated in state court and dismissed with prejudice, or should have been included in his state court action.[9]

Res judicata also precludes this Court from further review of Plaintiff's allegations in the instant action.  First, the judgment in state court was valid, final and on the merits.  New Jersey law dictates that a dismissal with prejudice "constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial." Dowdell, 94 F.Supp.2d at 533.  Second, the present action involves the same parties that were involved in the original state court action.  Finally, the claims in this action not only arise out of the same occurrences as the claims asserted in the state court action, but are also virtually identical to the claims set forth in Plaintiff's state court complaints. While Plaintiff did not plead his state court claim with clarity, the state court categorized his claim as one asserting a violation of § 1983.  Therefore, his § 1983 claim was dismissed with prejudice and cannot be re-litigated in this Court.  See Sponzilli Cert. Ex. G, Ex. I.  The civil rights claims in the instant action which were not raised in the state court action are barred by the entire controversy doctrine.

---

[8] See discussion infra Part II.C.

[9] While the state court did not address on the merits Plaintiff's breach of contract and breach of covenant of good faith and fair dealing claims, these claims cannot be adjudicated in this Court because the Court declines to exercise supplemental jurisdiction over them.  See discussion infra Part II.E.

14

**C.      Plaintiff does not state a cause of action under § 1981**

Section 1981 prohibits racial discrimination in the making and enforcement of contracts and property transactions.  See Brown v. Phillip Morris Inc., 250 F.3d 789, 796 (3d Cir.2001).  In order to state a claim under § 1981 "a plaintiff must allege facts in support of the following elements: (1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." Perry v. Gold & Laine, P.C., 371 F.Supp.2d 622, 628 (D.N.J. 2005) (quoting Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir.2001) (internal quotations omitted)).  A showing of disparate impact is insufficient because § 1981 only provides a cause of action for intentional discrimination.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 562 (3d Cir.2002) (citing Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 390-391 (1982)).

Here, even after liberally construing Plaintiff's pro se pleadings and reviewing the evidence in the record, the Court finds that Plaintiff does not state a cause of action under § 1981.  The record does not reflect that Plaintiff's race was the reason for his dismissal from Rutgers.  Plaintiff merely adds § 1981 to his preexisting § 1983 claim and does not support his § 1981 claim with any evidence demonstrating that Defendant's staff members intended to discriminate against him because of his race.  Furthermore, there is nothing in the record that suggests Defendant engaged in or intended to engage in any racially motivated discrimination against Plaintiff.  Rather, it appears that the addition of the § 1981 claim was a last minute effort by Plaintiff to inject a federal claim into his action and thereby gain access to federal court.  Such a bald allegation of a violation of federal law cannot constitute an actionable claim in this Court.

**D.      Plaintiff's 42 U.S.C. § 1985 and § 1986 claims**[10]

Plaintiff's second response to Defendant's motion alleges violations under 42 U.S.C. § 1985 ("§ 1985") and 42 U.S.C. § 1986 ("§ 1986"); however, there is no evidence in the record that supports such violations under the statute.  Although Plaintiff does not specify which subsection of § 1985 Defendant has violated, the Court finds that the third clause of § 1985 is the only subsection applicable to Plaintiff's case.[11]  §1985(3) protects persons from deprivations of rights committed by either private or state actors as part of a conspiracy.  See Brown, 250 F.3d at 805.  § 1985(3) does not create any substantive rights, but rather serves as a vehicle for vindicating federal rights and privileges that have been defined elsewhere.  Id. (citing Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 376 (1979)).  To succeed in an action under § 1985(3), a plaintiff must show "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus, designed to deprive, directly or indirectly, any person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  White v. Williams, 179 F.Supp.2d 405, 421 (D.N.J. 2002) (citing Lake v. Arnold, 112 F.3d 682, 685 (3d Cir.1997)).  The Supreme Court has recognized only two rights protected by § 1985(3): the right to be free from involuntary servitude and the right

[10] The Court notes that Plaintiff's second response was not permissible under the Federal Rules of Civil Procedure or this Court's briefing schedule.  A complaint may not be amended by a brief in opposition to a motion to dismiss.  See Eli Lilly and Co. v. Roussel Corp., 23 F.Supp.2d 460, 493 (D.N.J. 1998).  However, because of Plaintiff's pro se status, the Court will address the validity of his § 1985 and § 1986 claims.

[11] § 1985(1) addresses a conspiracy to prevent an officer of the United States from performing his duties and § 1985(2) addresses conspiracies interfering with witnesses in federal court and obstructing justice in state courts in order to deny any citizen equal protection of the laws.  See 42 U.S.C. § 1985(1) and (2).

16

to travel interstate.[12]  See Brown, 250 F.3d at 805 (citing Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278 (1993)).

A plaintiff has a valid cause of action under § 1986 against a person who had knowledge of a conspiracy addressed in § 1985, "and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do ...."  42 U.S.C. § 1986.  A § 1986 claim depends on proof of a § 1985 claim.  See e.g. Rogin v. Bensalem Township, 616 F.2d 680, 691 (3d Cir.1980).

Here, while Plaintiff alleges that Defendant's staff, led by Associate Dean Rabinowitz, conspired to deprive him of his constitutional rights, the Court finds that these claims are deficient as a matter of law because the record shows no evidence of racial hostility.  Although entitled to the benefit of all justifiable inferences from the evidence, a nonmoving party cannot withstand summary judgment by resting on mere allegations or denials in the pleadings.  Rather, such party must rely on affidavits or other evidentiary matter that shows there is a genuine issue for trial.  See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Given that there are no facts in the record demonstrating Defendant's violations of these federal statutes and Plaintiff's failure to come forward with any evidence to support his § 1985 and § 1986 claims, summary judgment on such claims is appropriate.

**E.      The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims**

A federal court has jurisdiction over a matter pursuant to diversity or federal question jurisdiction.  See 28 U.S.C. §§ 1331, 1332.  Under 28 U.S.C. § 1367, once a court has original jurisdiction over some claims in an action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy.  28 U.S.C. § 1367.  However, the exercise of supplemental jurisdiction is a matter of discretion.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) (stating that "pendent jurisdiction is a doctrine of discretion, not of

---

[12] The Court notes that Plaintiff has not alleged impairments of either right recognized by the Supreme Court as being protected by § 1985(3).

plaintiff's right."). Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction ... if ... the ... court has dismissed all claims over which it has original jurisdiction."

Here, the Court does not have diversity jurisdiction because there is no diversity of citizenship between the parties. In addition, the Court is precluded from hearing Plaintiff's § 1983 claim because such claim was already adjudicated in state court. Moreover, there is no federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff has failed to state a cause of action under § 1981, § 1985 and § 1986. Since there are no federal claims remaining in this matter, this Court declines to exercise supplemental jurisdiction over Plaintiff's breach of contract and breach of covenant of good faith and fair dealing claims.

**III.    CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss, or in the alternative, motion for summary judgment on Plaintiff's Complaint and Amended Complaint is granted. The Court will issue an appropriate Order.


Dated: August 23, 2005_____


                                                    /s/ Freda L. Wolfson
                                                    Honorable Freda L. Wolfson
                                                    United States District Judge

18